## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDMON FELIPE ELIAS YUNES,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 14-1397 (JDB)** |
| **UNITED STATES DEPARTMENT OF JUSTICE, et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

Edmon Felipe Elias Yunes asks this Court to compel the Federal Bureau of Investigation to undertake a search of his records pursuant to a Freedom of Information Act request. When he filed suit, Elias Yunes believed that the statutory period for a response had expired without any action from the FBI. But the FBI had conducted a search—and its letter to that effect crossed paths with the filing of this suit. As a result, the Department of Justice (representing the FBI)[1] has moved to dismiss Elias Yunes's lawsuit, or alternatively to obtain summary judgment, arguing that he failed to exhaust his administrative remedies. The Court agrees.

## BACKGROUND

Elias Yunes is a citizen of the Dominican Republic. Earlier this year, the United States government revoked his visa: the Department of Justice had flagged him as a known or suspected terrorist. See Ex. B to Pl.'s Opp'n [ECF No. 11-4] at 4. On June 13, with the assistance of a lawyer, Elias Yunes submitted a FOIA request to the FBI, asking for a search of

---

[1] Elias Yunes has also named as a defendant the Department of State. State has filed an answer to the complaint and has not requested dismissal of the suit. This opinion thus pertains only to defendant Department of Justice.

the agency's Central Records System for any information regarding criminal or terrorist activities under his name.  See Ex. A to Def.'s Mot. to Dismiss [ECF No. 9-2] at 3.

From here, accounts diverge.  According to the government, the FBI sent Elias Yunes's lawyer an acknowledgement letter on July 1.  The letter indicated that the agency had begun searching its records for responsive information and provided Elias Yunes with his request number.  See Ex. B to Def.'s Mot. [ECF No. 9-2] at 6; Hardy Decl. [ECF No. 9-1] at 3.  Elias Yunes's lawyer, however, avers that she never received this letter.  Perez Decl. [ECF No. 11-2] at 2.  But when she received a similar letter regarding another client—a client whose request she had submitted in the same envelope as Elias Yunes's—she called to investigate.  Id.  As a result, the lawyer obtained Elias Yunes's case number on July 22.[2]

On August 8, the FBI mailed a letter to Elias Yunes's lawyer (at Elias Yunes's address), informing her that the agency was "unable to identify main file records responsive to the FOIPA" and explaining his right to appeal to the Office of Information Policy within sixty days.  Ex. C to Def.'s Mot. [ECF No. 9-2] at 8.  But Elias Yunes's lawyer did not receive the letter until September 19.  See Perez Decl. at 2.[3]  And the letter she received was dated August 6, while the one the FBI produced was dated August 8.  Compare Ex. B to Pl.'s Opp'n at 2 with Ex. C to Def.'s Mot. at 8.

Meanwhile, on August 15—after the FBI mailed the letter, but before the lawyer received it—Elias Yunes filed the present suit, requesting that the Court order the FBI to conduct an appropriate search.  Compl. at 6.  A few weeks later, on September 3, Elias Yunes's lawyer

---

[2] This account is somewhat difficult to reconcile with Elias Yunes's statement that, on July 2, his lawyer received an e-mail from the FBI acknowledging that it received his request on June 16.  See Compl. [ECF No. 1] at 5.  In any event, it is clear that, at some point in July, Elias Yunes's lawyer knew his request had been received and knew the case number.

[3] Elias Yunes's lawyer is careful to state that she received the letter on September 19; she does not reveal whether Elias Yunes received it on an earlier date.  Indeed, because the letter was mailed to Elias Yunes's address in Florida, see Ex. C to Def.'s Mot. at 8, it appears likely that he would have forwarded it to his lawyer in the Dominican Republic—which would explain the delay in receipt.

received a letter regarding her other client, explaining that no records had been found. <u>See</u> 2d Perez Decl. [ECF No. 14-2] at 1. When she appealed that determination, she decided, "[a]s a matter of caution," Perez Decl. at 2, to appeal Elias Yunes's as well, "though [she] had not yet received the denial for Elias Yunes at that time," 2d Perez Decl. at 2. The Office of Information Policy received the appeal on October 15. Perez Decl. at 3.

The Department of Justice has filed a motion to dismiss, or, alternatively, to obtain summary judgment as to the FBI request. The government argues that Elias Yunes failed to exhaust his administrative remedies—namely, an appeal to the Office of Information Policy—<u>before</u> filing this suit.

## <u>LEGAL STANDARD</u>

The government presents its motion as one to dismiss, or, in the alternative, for summary judgment. It is true that "[c]ourts ordinarily analyze [such an argument] under Rule 12(b)(6)." <u>Walsh v. FBI</u>, 905 F. Supp. 2d 80, 83 (D.D.C. 2012). But where, "on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Here, both parties have attached "declarations and documentary evidence outside the pleadings" to their briefs; thus, the Court must convert the motion to one for summary judgment. <u>Calhoun v. Dep't of Justice</u>, 693 F. Supp. 2d 89, 91 (D.D.C. 2010) (internal quotation marks omitted). Under that standard, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u>

issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986).  In

making such a determination, "[a]gency affidavits are afforded a presumption of good faith and

can be rebutted only with evidence that the agency did not act in good faith." <u>Walsh</u>, 905 F.

Supp. 2d at 84 (internal quotation marks omitted).

## <u>ANALYSIS</u>

"Exhaustion of administrative remedies is generally required before filing suit in federal

court so that the agency has an opportunity to exercise its discretion and expertise on the matter

and to make a factual record to support its decision." <u>Hidalgo v. F.B.I.</u>, 344 F.3d 1256, 1258

(D.C. Cir. 2003) (internal quotation marks omitted).  Although exhaustion is not a jurisdictional

requirement in FOIA cases, it is a jurisprudential one.  <u>See</u> <u>id.</u> at 1258–59.

In the FOIA context, exhaustion generally requires completion of "an administrative

appeal process following an agency's denial of a FOIA request." <u>Oglesby v. U.S. Dep't of

Army</u>, 920 F.2d 57, 61 (D.C. Cir. 1990); <u>see also</u> 5 U.S.C. § 552(a)(6)(A)(ii) (requiring agencies

to "make a determination with respect to any appeal within twenty days . . . after the receipt of

such appeal" and providing for notification of the possibility of judicial review if the denial is

upheld).  But that requirement is predicated on the agency fulfilling its own responsibilities in the

first instance—namely, to make a determination on any request within twenty days, <u>see</u> 5 U.S.C.

§ 552(a)(6)(A)(i), or within thirty days in "unusual circumstances," <u>id.</u> § 552(a)(6)(B)(i).  If the

agency "fails to comply with the applicable time limit provisions," however, the requester "shall

be deemed to have exhausted his administrative remedies." <u>Id.</u> § 552(a)(6)(C)(i).  In that case,

"the requester may [then] bring suit." <u>Oglesby</u>, 920 F.2d at 62.

This escape-hatch provision is not, however, without limit.  "[A]n administrative appeal

is [still] mandatory if the agency cures its failure to respond within the statutory period by

responding to the FOIA request before suit is filed." Id. at 63.   That is: "[C]onstructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request.   But once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review." Id. at 64.

And that seems to be the situation here.   The government's twenty-day period expired at the end of July (counting from the acknowledgment letter sent on July 1.)   As a result, Elias Yunes would have been well within his rights to file suit immediately without pursuing any administrative appeal.   But he did not do so until August 15.   And in the interim, on August 8, the FBI responded to the request: Elias Yunes's complaint, then, was a week too late to avoid the exhaustion requirement.

Elias Yunes offers two responses.   First, he suggests that there is something fishy about the FBI's August letter.   The FBI's copy is dated August 8, but the one his lawyer received is dated August 6.   Elias Yunes intimates that the discrepancy is indicative, perhaps, of the government backdating its files.   But the government proffers a reasonable explanation: the FOIA analyst accidentally mailed an earlier version of the letter, one that she had printed before its review.   See Argall Decl. [ECF No. 13] at 4.   Elias Yunes puts forth no evidence to dispute the government's account or to undermine the presumption of good faith in such agency affidavits.   See Walsh, 905 F. Supp. 2d at 84.   Indeed, one imagines that if the government were nefariously backdating FOIA request letters, it would take care to avoid such discrepancies. Elias Yunes has therefore failed to evince a genuine issue of material fact as to the date of the government's determination.   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (explaining that a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

Elias Yunes further argues that, even if the letter was sent before he filed suit, the date of its mailing is not pertinent.  Rather, he contends that the timing of the letter's receipt, rather than its mailing, is what counts.  Because he filed suit before receiving the FBI's determination, Elias Yunes believes, he need not exhaust his administrative remedies.  But this interpretation finds no support in the relevant caselaw.  See, e.g., Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1310 (D.C. Cir. 2003) ("If the agency responds to the request after the twenty-day statutory window, but before the requester files suit, the administrative exhaustion requirement still applies." (emphasis added)); Oglesby, 920 F.2d at 66 ("[I]f the agencies do not respond within twenty days of the appeal, the appellant will be deemed to have fully exhausted his administrative remedies and may bring suit." (emphasis added)).  The Court of Appeals's focus on response, rather than receipt, comports with the relevant statutory language as well: the statute requires an agency to make a "determin[ation]" within twenty days of the receipt of a request.  5 U.S.C. § 552(a)(6)(A)(i).  There is no stricture on when that determination must be received by the requester.

Elias Yunes counters with one district court case, which he believes stands for the proposition that exhaustion is not required unless it is established that he received a response before filing suit.  See Pl.'s Opp'n [ECF No. 11-1] at 3.  But in that case, the court found a genuine issue of material fact as to whether the government ever mailed a relevant letter—not as to its arrival date.  See Walsh, 905 F. Supp. 2d at 86–87.  Here, in contrast, it is clear that the FBI mailed the determination letter—and there is no genuine dispute that it did so before Elias Yunes filed this suit.

Finally, Elias Yunes contends that he has, in fact, exhausted his administrative remedies because he filed an appeal with OIP within the appropriate timeframe.  But that assertion does

not comport with any accepted definition of exhaustion.  See Oglesby, 920 F.2d at 65 (noting that the "statutory administrative appeal process[] allow[s] the agency to complete its disclosure process before courts step in").  True, he took the right steps to start—but he did so after filing this complaint, and he has failed to wait for the appeal to be resolved.

In short, "permitting [Elias Yunes] to pursue judicial review without benefit of prior OIP consideration would undercut the purposes of exhaustion, namely, preventing premature interference with agency processes, affording the parties and the courts the benefit of the agency's experience and expertise, or compiling a record which is adequate for judicial review." Hidalgo, 344 F.3d at 1259 (internal quotation marks and alterations omitted).  As far as the parties have informed the Court, Elias Yunes's appeal is currently pending before OIP.  He may, of course, choose to file suit again after that remedy has been fully exhausted.  Until then, the Court's consideration of his claims is premature.

## CONCLUSION

For the reasons set forth above, the DOJ's motion for summary judgment is granted.  A separate Order will issue on this date.

_____/s/_____

JOHN D. BATES
United States District Judge

Dated: January 5, 2015