UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDMON FELIPE ELIAS YUNES,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al.,

    Defendants.

Civil Action No. 14-1397 (JDB)

## MEMORANDUM OPINION

Edmon Felipe Elias Yunes, a citizen of the Dominican Republic who believed that his United States visa was improperly revoked, filed Freedom of Information Act requests with the Federal Bureau of Investigation and Department of State seeking records to uncover why the United States considered him ineligible to enter the country. Much of the responsive material located by these agencies was withheld pursuant to FOIA exemptions. On August 15, 2014, Yunes brought suit against the Department of State and the Department of Justice alleging that the agencies failed to conduct an adequate search of their records and failed to produce responsive records as required by FOIA. Now before the Court are the parties' cross-motions for summary judgment. The Court will grant summary judgment to the Department of State, and grant in part but deny in part summary judgment to the DOJ. Yunes's motion will be denied and the DOJ will be given an opportunity to file a renewed motion.[1]

---

[1] Yunes passed away on March 10, 2016, at which point a motion was filed to substitute his son Edmon de Jesus Elias Hermida as the plaintiff pursuant to Federal Rule of Civil Procedure 25(a)(1). Pl.'s Mem. in Supp. Mot. to Substitute Parties [ECF No. 58]. The motion is unopposed by the government and will be granted.

1

**BACKGROUND**

In November 2010, Yunes, a businessman in the Dominican Republic, was notified that his United States visa was being revoked. Compl. [ECF No. 1] ¶ 4. At first he was given no explanation for the revocation, only later learning that the Department of Justice's Terrorist Screening Center had identified him as a "known or suspected terrorist." Id. In order to learn why the United States believed him to be a criminal or terrorist, Yunes sent a FOIA request to the Department of State on April 15, 2014, seeking "[r]ecords regarding alleged criminal activities that have led to his visa revocation." Id. ¶ 13. He sent a similar FOIA request to the FBI on June 13, 2014, seeking "[i]nformation regarding [his] terrorist/criminal activities." Id. ¶ 18.

On December 18, 2014, the State Department informed Yunes that it had initiated searches of three file locations: Central Foreign Policy Records, Office of Visa Services (Visa Office), and the U.S. Embassy in Santo Domingo, the Dominican Republic. Dep't of State's Statement of Material Facts [ECF No. 40] ¶ 3. Upon completing those searches, the Department had found 30 responsive documents in the Visa Office's records and five responsive documents in the Central Foreign Policy Records. Id. ¶¶ 3–4. A search of the embassy's records resulted in no responsive material. Id. ¶ 4. Of the responsive documents, twenty-nine were withheld in full, two were released, and the remaining four were referred to the FBI. Id. ¶¶ 3–5.

The FBI, in handling Yunes's FOIA request, processed 52 responsive pages, which were Bates stamped as Yunes-1 through Yunes-52. DOJ's Statement of Material Facts [ECF No. 48] ¶ 22. (The Court will rely on these labels throughout this opinion.) Each instance of information withheld from the Bates-stamped documents is accompanied by a coded designation to identify the purportedly applicable FOIA exemption. Id. at ¶ 21. For example, if (b)(7)(E) appears on a document, the FBI is relying on Exemption 7(E), which protects against disclosing certain law

enforcement information or records. These designations have been further parsed into subcategories. Id. So, for example, if the label (b)(7)(E)-5 appears on a document, the FBI is protecting file numbers or names. DOJ's Mot. for Summ. J. [ECF No. 48] at 41. Using (b)(7)(E)-10, on the other hand, refers to protecting a law enforcement method of collecting or analyzing information. Id. Of the 52 responsive pages located by the FBI, two were released in full, 14 were released in part, and 36 were withheld in full. DOJ's Statement of Material Facts ¶ 25.

The government has moved for summary judgment on Yunes's claims seeking disclosure of the withheld documents and redacted information. In his opposition and cross-motion, Yunes has challenged the adequacy of the State Department's search and each agency's reliance on FOIA's exemptions.

## LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In a FOIA action, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)). Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by

evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

## DISCUSSION

Because Yunes's eleven-page cross-motion for summary judgment and opposition to defendants' motions for summary judgment contests relatively few of the defendants' arguments, this case has narrowed from challenges to each defendant's search and every withholding to a much more limited set of issues. For most of the remaining contested matters the agencies have shown they are entitled to summary judgment. But, as will be explained below, the FBI has not demonstrated that summary judgment is appropriate for every exemption it has claimed.

### I. DEPARTMENT OF STATE

Yunes argues that the State Department is not entitled to summary judgment because it has not conducted an adequate search. Pl.'s Opp'n [ECF No. 52-1] at 3–4. To obtain summary judgment on the adequacy of its search, the Department must show that, viewing the facts in the light most favorable to the requester, the agency's search was "reasonably calculated" to uncover relevant documents. Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotation marks omitted). To carry this burden, the Department may submit affidavits or declarations that, in reasonable detail and in a non-conclusory fashion, set forth the scope and method of the agency's search. Meeropol v. Meese, 790 F.2d 942, 952 (D.C. Cir. 1986). Here, the State Department has submitted a declaration from John F. Hackett, the Director of the Department's Office of Information Programs and Services, to describe the search process. Hackett attests that the State Department identified three offices or records systems reasonably likely to contain responsive records: the Central Foreign Policy Records (the principal records

4

system of the State Department), the Visa Office, and the U.S. Embassy in Santo Domingo. Hackett Decl. [ECF No 40-1] ¶ 12.

Yunes does not contest that the State Department conducted adequate searches of the Central Foreign Policy Records and the Visa Office. Pl.'s Opp'n at 3. But he does challenge the search in the Dominican Republic. Id. at 4. A search at the embassy was conducted by a Consular Assistant and an Information Security Specialist of paper and e-mail records using the search terms "Edmon Felipe Elias Yunes," "SC3561818," "200816956 0001," and "January 10, 1934." Hackett Decl. ¶ 22. Yunes objects that the search description in the Hackett Declaration is "unclear" and "fails to provide the actual facts necessary to establish it as an adequate search for FOIA purposes." Pl.'s Reply [ECF No. 57] at 2. In particular, he complains that the description lacks specificity as to who conducted the search, whose emails were searched, and how paper records are organized. Pl.'s Opp'n at 4. Yunes's demands, though, require more of the State Department declaration than FOIA does.

While it is not enough for an affidavit to state in conclusory fashion that the agency "conducted a review of [the] files which would contain information that [the plaintiff] has requested," Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 370 (D.C. Cir. 1980) (internal quotation marks omitted), an affidavit need not go into exhaustive detail about every aspect of the search. Rather, to afford a FOIA requester like Yunes an opportunity to challenge the adequacy of the search, the agency's affidavit must set forth "the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). The Hackett Declaration contains these necessary details. It begins by identifying the places likely to contain responsive materials—including the embassy. As to the embassy search, it lists the search terms

used and describes the type of search performed—of paper and email records. And it goes further to identify by title the Department employees, a Consular Assistant and an Information Security Specialist, who conducted the search. Hackett also describes how the searched files are organized: "The Embassy's paper records are organized either alphabetically by paternal surname or, in the instance of case files, by case number. The e-mail records are organized by individual user." Hackett Decl. ¶ 22. These representations provide sufficient specific information to allow Yunes to challenge the procedures utilized.

Once the agency has provided a "relatively detailed" affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (internal quotation marks omitted). Yunes objects to the search's adequacy based on Hackett's conclusion that "the only information regarding [Yunes's] non-immigrant visa available to Embassy staff was that maintained in the [Consular Consolidated Database ("CCD")]." Hackett Decl. ¶ 22. From this Yunes infers that the CCD records available to the embassy were not "examined by FOIA processing staff." Pl.'s Opp'n at 4. But the CCD was already searched by the Visa Office, Hackett Decl. ¶¶ 18–19—a search that Yunes does not challenge. As a result of that search the Visa Office retrieved thirty documents. Id. ¶ 20. Still, Yunes sees neglect in the Department's failure to determine if the CCD records accessible to embassy staff "had additional non-duplicate material on them." Pl.'s Opp'n at 4. The CCD, though, is one central electronic database "that holds all of the current and archived data entered by consular officers from U.S. embassies and consulates around the world, including the U.S. Consulate in Santo Domingo." Hackett Decl. ¶ 18. The Court cannot find the logic in Yunes's

argument that the CCD records accessible to the embassy could contain "non-duplicate" material beyond the CCD records searched by the Visa Office.

Yunes also believes that the embassy search was inadequate because, according to his reply brief, he and his family communicated with embassy personnel, and yet the Department does not state that these particular encounters were searched for. Pl.'s Reply at 2–3 (citing Yunes's declaration). Yunes's reply, however, first overstates the factual representation in his declaration, which says only that his son approached a U.S. diplomat and U.S. congressmen about his father's visa. Yunes Decl. [ECF No. 52-3] ¶ 4. These facts do not show communication with the embassy let alone the type of communication that would necessarily be memorialized. Second, as already discussed, there is no requirement that the Department's search description address its search at the level of detail that Yunes wants, i.e. to explain how its search was designed to encompass a specific document as opposed to responsive documents generally. And in any event, missing records by themselves would not suffice to fatally undermine a search that the agency has shown to be adequate. See Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011). The Court finds that Yunes has not presented a genuine issue of material fact as to whether the State Department conducted a reasonable, adequate search. The State Department is therefore entitled to summary judgment on this point.

As it turns out, that is the end of Yunes's dispute with the Department. While he attempts to argue that the embassy records cannot be withheld because "State has not processed these records as it claims that they are duplicative of the records located in the Visa Office," Pl.'s Opp'n at 5–6, this is no more than a restatement of his adequacy-of-the-search argument. And his reply brief confirms that he does not otherwise contest the Department's use of Exemption 3 in conjunction with the Immigration Nationality Act to justify nondisclosure of the documents

retrieved by non-embassy offices. Pl.'s Reply at 7. Given that these documents were withheld in full pursuant to that uncontested exemption, see Hackett Decl. ¶¶ 30–46, the Court need not address Yunes's challenge to the Department's simultaneous reliance on Exemption 7(E). Because the State Department's search was adequate and Yunes does not contest the Department's withholding of responsive documents pursuant to Exemption 3, the Department's summary judgment motion will be granted.

## II. FBI

Yunes does not contest the adequacy of the FBI's search, see Pl.'s Opp'n at 3 n.2, so the Court can move right to an assessment of its withholdings. The 50 responsive pages from which the FBI withheld information can be separated into four categories. The first is nine pages of an Investigation Initiation Form, which were withheld in full by the FBI on behalf of the Organized Crime Drug Enforcement Task Forces (OCDETF) pursuant to Exemptions 5, 6, 7(C) and 7(E).[2] Next is a four-page Financial Crimes Enforcement Network (FinCEN) report, which was withheld in full pursuant to Exemption 3.[3] The third is ten pages that contain information that the FBI withheld on the primary basis of exemptions that are justified only in its ex parte and in camera submissions.[4] And the fourth is pages that are not contested by Yunes, as is explained at the outset below.

---

[2] These pages are Yunes-1 and Yunes-3 through Yunes-10. DOJ's Supp. Ex. [ECF No. 60-1] at 4, 6–8; see 2d Am. Hardy Decl. [ECF No. 46-2] ¶ 109 & n.39; Am. Aronica Decl. [ECF No. 46-4] at 2.

[3] These pages are Yunes-11 through Yunes-14. DOJ's Supp. Ex. at 9–10; see 2d Am. Hardy Decl. ¶ 48 & n.12.

[4] These pages are Yunes-19 through Yunes-28. DOJ's Supp. Ex. at 15–24; see 4th Hardy Decl. [ECF No. 55-1] ¶ 8 (describing the pages withheld or containing redactions primarily under category (b)(7)(E)-2/8).

### A. Uncontested Pages

Yunes forgoes any challenge to the FBI's use of Exemptions 6, 7(C), and 7(D). Pl.'s Opp'n at 1 n.1. These explicit concessions resolve the withholdings on three of the responsive pages identified by the FBI.[5] Another nineteen pages were withheld in full under three of the Exemption 7(E) subsets, E-2, E-3, and E-10.[6] See 4th Hardy Decl. [ECF No. 55-1] ¶ 7(B). Yunes objects to the FBI's reliance on E-2 because that use of Exemption 7(E) has only been explained ex parte. But as to these nineteen pages, the Court need not address the ex parte justifications because the pages were also withheld in full pursuant to two publicly explained subsets—E-3, used to protect database identifiers and printouts, and E-10, used to protect methods of collecting and analyzing information. Id.; see DOJ's Mot. for Summ. J. at 41. The DOJ's motion for summary judgment argues that it is entitled to summary judgment because these pages were properly withheld to protect non-public databases used for official law enforcement purposes and to protect methods that the FBI uses to collect and analyze the information it obtains for investigative purposes. DOJ Mot. for Summ. J. at 42–45. Yunes did not address these arguments in his opposition. A Vaughn Declaration submitted with the DOJ's reply identifies this concession, 4th Hardy Decl. ¶ 5, and yet Yunes, in his subsequent reply, still does not respond to these assertions. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003). Because these pages were withheld in full on grounds that Yunes

---

[5] Yunes-2 was redacted pursuant to Exemptions 6, 7(C), and 7(E)-9. DOJ's Supp. Ex. at 5. The FBI no longer asserts category 7(E)-9, but all of that information was also withheld under Exemptions 6 and 7(C). 2d Am. Hardy Decl. ¶ 110 n.41. Yunes-15 and Yunes-17 contain redactions only under Exemptions 6 and 7(C). DOJ's Supp. Ex. at 11, 13.

[6] These pages are Yunes-34 through Yunes-52. See DOJ's Supp. Ex. at 30–33, 35–42; id. at 34 (identifying Yunes-38 through Yunes-41 as duplicative of Yunes-34 through Yunes-37).

has declined to address, the Court will treat the propriety of the FBI's withholding of these pages as conceded.

For similar reasons, there is no genuine dispute as to the withholdings on Yunes-18 or Yunes-30 through Yunes-33. Just like the 7(E)-3/10 withholdings, the withholdings under subset E-5 (to protect sensitive file numbers of subfile names) were publicly explained by the Hardy Declaration and Yunes did not respond to those arguments.[7] Any dispute as to the use of Exemption 1 for these pages is moot because the same material is protected by the undisputed use of Exemption 3 in conjunction with the National Security Act. See Pl.'s Opp'n at 7 n.4; DOJ's Mot. for Summ. J. at 13, 20, 23. Hence, as to Yunes-18, the Court again need not deal with the ex parte justifications because this page was withheld under these other exemptions. See 4th Hardy Decl. ¶ 7(A).

### B. Investigation Initiation Form

Nine pages withheld by the FBI comprise an OCDETF Investigation Initiation Form. Am. Aronica Decl. [ECF No. 46-4] at 2. OCDETF is "a multi-agency program in the Department of Justice that provides policy direction and funding to drug enforcement agencies for the investigation and prosecution of high-level drug trafficking, money laundering or violent criminal organizations." Id. at 4. An investigation initiation form is an administrative document completed by the assistant U.S. attorney assigned to a case and submitted to OCDETF in order to obtain OCDETF designation and funding for a case. Id. This form was referred by the FBI to OCDETF, which applied Exemption 7(E) as "justification for withholding the entire document." Id. at 2 n.6.

Exemption 7(E) protects "records or information compiled for law enforcement purposes . . . to the extent that the production" of such records "would disclose techniques and

---

[7] The same is true of the FBI's withholdings under 7(E)-1 (to protect internal email addresses and non-public intranet web addresses).

procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding"; it need only "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011) (internal quotation marks omitted). The FBI relies on the declaration of Jill Aronica, Chief of OCDETF's Information Systems Section, to support the use of this exemption. Yunes contends that the Aronica Declaration fails to show that the initiation form falls within this exemption because her declaration "only describes the process generally used by OCDETF in filling out the form and does [not] specifically describe the form in this case." Pl.'s Reply at 6. Therefore, Yunes argues, "it isn't clear that there are law enforcement techniques mentioned in this document that would truly cause the circumvention of any actual law." Id. Yunes's point is well taken. The Aronica Declaration is largely written in general terms about the contents of "an" initiation form rather than this initiation form. See Am. Aronica Decl. at 5–7.

However, the Court finds that the FBI is still entitled to withhold these pages pursuant to Exemption 7(E) because initiation forms themselves, regardless of the exact contents filled in by a particular U.S. attorney about a particular case, "provide prompts on techniques for law enforcement to include if appropriate in investigations and organization characteristics and methods to recognize. These investigative techniques and organization characteristics are reported on and included as reminders for law enforcement to consider throughout investigations." Id. at 6 n.9. In other words, the forms "serve as a guideline/manual type of record—a blueprint to be followed in all OCDETF cases." Id. at 6 n.10. For this reason, OCDETF claims that "[i]f released,

11

these forms provide a roadmap on law enforcement techniques to be circumvented or evaded, and may function as an organizational tool for criminal enterprises." Id. at 6 n.9.

These representations are sufficient for the Court to discern the substance of the withheld form and they demonstrate logically how the release of that information might create a risk of circumvention of the law. See Blackwell, 646 F.3d at 42. Hence, the Court concludes that the FBI has established the correctness of its 7(E) claims and is entitled to summary judgment. See Mayer Brown LLP v. IRS, 562 F.3d 1190, 1192–93 (D.C. Cir. 2009) (holding that settlement guidelines were properly withheld under Exemption 7(E) because the information could reasonably be expected to risk circumvention of the law); Am. Immigration Council v. U.S. Dep't of Homeland Sec., 21 F. Supp. 3d 60, 82 (D.D.C. 2014) (finding that Immigration and Customs Enforcement properly withheld draft operation plan under Exemption 7(E)); Durrani v. U.S. Dep't of Justice, 607 F. Supp. 2d 77, 91 (D.D.C. 2009) (finding that Exemption 7(E) covered surveillance techniques that could impede current and future investigations). Because the material was withheld in full under Exemption 7(E), the Court need not address whether the additional reliance on Exemption 5 was also proper.

### C. FinCEN Report

Four of the pages withheld by the FBI contain information obtained from FinCEN, which has primary responsibility for implementing the Bank Secrecy Act. 2d Am. Hardy Decl. ¶ 45. The FBI contends these pages are covered by Exemption 3, which permits the withholding of information that is "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), in conjunction with the Bank Secrecy Act (BSA). The BSA exempts "report[s] and records of reports" collected under the Act from disclosure under FOIA. 31 U.S.C. § 5319; see Boyd v. Exec. Office for U.S. Att'ys, 87 F. Supp. 3d. 58, 90 (D.D.C. 2015).

The purpose of the BSA is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities." 31 U.S.C. § 5311. Not surprisingly then, a centerpiece of the Act is recordkeeping and reporting requirements. See id. §§ 5313–16. The BSA, though, also provides for other enforcement mechanisms. For example, the BSA allows the government to summon an officer of a financial institution to give testimony, under oath, or to produce additional books, papers, records, or data. Id. § 5318(a)(4).

The FBI asserts that the pages at issue, a FinCEN report, are properly withheld under Exemption 3 because FinCEN "included the caveat that information in the record is BSA information." 4th Hardy Decl. ¶ 10. As Yunes points out, however, "the FBI does not describe exactly what the information is (i.e. report, bank records, affidavit, etc . . . )." Pl.'s Opp'n at 6–7. The FBI just states that the pages contain "information obtained through the BSA." 2d Am. Hardy Decl. ¶ 48. In order to grant summary judgment in favor of the DOJ, the Court would have to infer that "information obtained through the BSA" is equivalent to information derived from BSA reports or records of reports. Cf. Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 118 (D.D.C. 2014) (holding that material "derived from reports generated pursuant to the Bank Secrecy Act" was properly withheld). But such an inference does not necessarily follow. As explained, information "obtained" through the BSA could be information gathered pursuant to BSA provisions other than the reporting requirements. All that the BSA exempts from FOIA disclosure, though, are "report[s] or records of reports." The Court finds that the FBI's invocation of Exemption 3 is insufficient here because it does not specify that the withheld information is derived from BSA reports or records of reports. The fact that the information was "obtained through the BSA" does not affirmatively prove that the information is derived from BSA reports. But nor has

such an inference been precluded. Thus, the Court finds it is inappropriate to grant summary judgment to either party. Rather, the Court will give the FBI another chance to explain why these pages can be withheld.

The Court notes that the FBI has also cited Exemption 7(E) for withholdings on these pages to protect information that would reveal methods for obtaining BSA information. 2d Am. Hardy Decl. ¶ 107. According to David Hardy, the Chief of the Record/Information Dissemination Section, Records Management Division, the FBI and FinCEN have developed and utilize a specific methodology—the details of which have not been publicly disclosed—for the FBI to request access to and electronically receive BSA information from FinCEN. 4th Hardy Decl. ¶ 11. It is this "specific—and non-public—methodology that the FBI protected" under 7(E). Id. The FBI asserts that "public disclosure would provide adversaries with the information necessary to develop methods to disrupt transmission and gain unauthorized access to the information. Such a breach would impede FBI efforts to interdict and solve crimes and acts of terror." Id.

This explanation is sufficient to justify the use of Exemption 7(E) for the information withheld to protect the non-public methodology. See Tourasi v. U.S. Dep't of Justice, 78 F. Supp. 3d 332, 348–49 (D.D.C. 2015) (holding that Exemption 7(E) was properly applied to withhold "results from various electronic databases" because "revealing the manner in which they are searched would enable individuals to circumvent identification"); see also Thelen v. U.S. Dep't of Justice, --- F. Supp. 3d ---, No. 15-0102 (BAH), 2016 WL 1048772, at *8 (D.D.C. Mar. 14, 2016) (holding that Exemption 7(E) was properly applied to withhold codes and file numbers which could allow individuals outside the agency to gain access to investigative information). Unlike the use of Exemption 3, though, the FBI has not claimed that Exemption 7(E) was used to withhold these pages in full. Compare 2d Am. Hardy Decl. ¶ 48, with id. ¶ 107. Indeed, the Court has a

hard time imagining how the full page—as opposed to say, a header or footer—could communicate the electronic methodology used by these agencies. If the FBI intended to justify the full withholding of these pages under Exemption 7(E), they are free to further explain that in a renewed motion.[8]

### D. Withholdings Justified By Ex Parte Submissions

The FBI has withheld ten pages either in full or in part on the primary basis that the material is exempt from disclosure under FOIA Exemptions 3 and 7(E), for reasons only fully explained in the agency's ex parte, in camera submissions.[9] The ex parte submissions are also offered to explain the application of Exemption 1 in certain instances. See DOJ's Mot. for Leave to File Ex Parte Decl. ("DOJ's Ex Parte Mot.") [ECF No. 41] at 1; DOJ's Mot. for Summ. J. at 50. In his second public declaration, Hardy states that, as required by Exemption 7(E), the protected records "would reveal sensitive law enforcement information concerning a specific technique or procedure employed in relation to criminal and national security cases." 2d Am. Hardy Decl. ¶ 104. The declaration explains that no more can be said "even generically, without revealing information that is, itself, exempt." Id. Nor can the FBI publicly discuss one particular paragraph protected by Exemption 3. Id. ¶ 52.

To supplement this declaration, the DOJ has moved to file ex parte and in camera the Third Hardy Declaration and corresponding exhibits. Yunes opposes the motion. The Court will grant the DOJ leave to file Hardy's third declaration and related attachments ex parte and in camera

---

[8] To the extent portions of these pages were withheld based on other exemption categories, Yunes has conceded the propriety of those withholdings for the reasons explained in Section II.A. of this opinion. Supra pp. 9–10; see DOJ's Supp. Ex. at 9–10 (relying on Exemptions 6 and 7(C), 7(E)-1, and 7(E)-3).

[9] To the extent portions of these pages were redacted based on other publicly explained exemption categories, Yunes has conceded the propriety of those withholdings for reasons explained in Section II.A. of this opinion. Supra pp. 9–10; see 4th Hardy Decl. ¶ 8 n.4; see also DOJ's Supp. Ex. at 18–24 (relying on Exemptions 6, 7(C), 7(E)-1, 3, 5, 10). (The FBI no longer asserts category 7(E)-7, but all of that information was also withheld under Exemptions 6 and 7(C). 2d Am. Hardy Decl. ¶ 110 n.41.)

based in part on the FBI's failure to describe the withheld documents in sufficient detail publicly and the related explanation that it could not do so without revealing the information it seeks to protect from disclosure. See Arieff v. U.S. Dep't of the Navy, 712 F.2d 1462, 1469 (D.C. Cir. 1983) (explaining that in camera affidavits are, "when necessary, part of a trial judge's procedural arsenal" (internal quotation marks omitted)). FOIA expressly contemplates that an agency may submit information in camera to sustain its burden of showing that the records are properly withheld. 5 U.S.C. § 552(a)(4)(B). In doing so, the statute recognizes "that judges must sometimes make these decisions without full benefit of adversary comment on a complete public record." Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1385 (D.C. Cir. 1979). Although the Court is aware that in camera declarations should be avoided unless truly necessary, see, e.g., Phillippi v. CIA, 546 F.2d 1009, 1013 (D.C. Cir. 1976), where an agency indicates that no additional information may be publicly disclosed without revealing precisely the information that the agency seeks to withhold, the receipt of in camera declarations is appropriate, Barnard v. U.S. Dep't of Homeland Sec., 598 F. Supp. 2d 1, 16 (D.D.C. 2009).[10]

Yunes protests that without more information he lacks the necessary details to even assess whether the FBI's use of these exemptions is appropriate. Pl.'s Reply at 3. Yunes's frustration is understandable, but in certain national security cases a "pure adversary process" is "simply not possible." Hayden, 608 F.2d at 1385. This case, which concerns the disclosure of specific information regarding the Terrorist Watchlist in connection with Yunes's request, DOJ's Ex Parte Mot. at 2, is one example where some of the interests of the adversary process are outweighed by

---

[10] In accordance with the D.C. Circuit's guidance to "make as much as possible of the in camera submission available to the opposing party" as is appropriate, the Court has also reviewed the DOJ's in camera submissions to determine whether any portions may be appropriately disclosed and placed on the public docket. See Armstrong v. Exec. Office of the President, 97 F.3d 575, 580 (D.C. Cir. 1996). The Court has determined that no portion of the declarations may be disclosed without revealing the information that the DOJ seeks to protect.

the nation's legitimate interests in secrecy and an orderly process for disclosure. The Court finds that in camera filing is appropriate because detailed public justifications would threaten to reveal the very information for which the exemptions were claimed. By extension, the Court rejects Yunes's argument that summary judgment is improper simply because necessary details were not provided publicly. See Mobley v. U.S. Dep't of Justice, 870 F. Supp. 2d 61, 68–69 (D.D.C. 2012) (allowing for in camera submissions over plaintiff's objection that the public filings did "not allow him anything close to a meaningful opportunity to contest its claims" (internal quotation marks omitted)); Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice, 584 F. Supp. 2d 65, 70–72 (D.D.C. 2008) (same).

Having considered the in camera submissions, the Court concludes that these documents are properly withheld or redacted pursuant to FOIA Exemptions 1, 3, and 7(E). This decision reflects the deferential standard applied by the D.C. Circuit for an agency withholding under Exemption 7(E) and citing national security concerns. See Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003) (citing the "well-established" principle "that the judiciary owes some measure of deference to the executive in cases implicating national security"). The DOJ's in camera submissions contain detailed descriptions of the withheld information and explain why the material cannot be further discussed on the public record without revealing information that the government is authorized to withhold from public disclosure. Accordingly, DOJ is entitled to summary judgment on this issue.

\* \* \* \* \*

Even where an agency has established the applicability of one or more FOIA exemptions, "it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." Assassination Archives & Research Ctr. v. CIA, 334 F.3d 55, 58 (D.C. Cir. 2003); see

also 5 U.S.C. § 552(b).  "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977); accord Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007). To justify withholding a document in full, an agency must show with "reasonable specificity" why the document cannot be further segregated, see Johnson v. Exec. Office for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks omitted), or why the document is not reasonably segregable—for example, because the nonexempt material "would be an essentially meaningless set of words and phrases," see Mead Data, 566 F.2d at 261.

In his declaration, Hardy states that the FBI, with the assistance of other agencies, carefully examined the responsive records and withheld only information protected by FOIA. 2d Am. Hardy Decl. ¶ 121. He explains how certain pages contained a mixture of material of which some could be segregated, and which was then released, but that other pages had to be withheld in full because "[a]ny further segregation of [the] intertwined material would employ finite resources only to produce disjointed words, phrases, or sentences, that taken separately or together, would have minimal or no informational content." Id. ¶ 118. The pages withheld in part confirm a detailed, line-by-line assessment of which exemptions applied to each piece of material. See, e.g., DOJ's Supp. Ex. at 22. Hardy concludes that no further non-exempt information could be segregated and released without revealing exempt information. 2d Am. Hardy Decl. ¶ 121. Yunes does not challenge this contention and the Court is satisfied that the FBI released all segregable documents, while reserving judgment on the FinCEN report at this time.

## CONCLUSION

The Court finds that the State Department conducted a reasonable search for records responsive to Yunes's FOIA request. The Court further concludes that all of the withholdings by

the FBI have been justified except for its application of Exemption 3 to the FinCEN report in conjunction with the Bank Secrecy Act. For these reasons, the Court will grant the State Department's motion for summary judgment, grant in part DOJ's motion for summary judgment, and deny Yunes's motion for summary judgment. The Court will also grant the DOJ's motion for leave to file ex parte and in camera. A separate order accompanies this memorandum opinion.


Dated: August 26, 2016

/s/
JOHN D. BATES
United States District Judge